VENABLE LLP
Roger A. Colaizzi (*Pro hac vice* to be filed)
racolaizzi@venable.com
Edward P. Boyle (*Pro hac vice* to be filed)
epboyle@venable.com
Jennifer Levin (SBN 252420)
jlevin@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:   (310) 229-9900
Facsimile:   (310) 229-9901

Attorneys for Defendant THE KROGER CO.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA ORTEGA, on Behalf of Herself and All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>THE KROGER CO.,<br><br>                              Defendant. | CASE NO.   2:14-cv-1949<br><br>DEFENDANT THE KROGER CO.'s NOTICE OF REMOVAL |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

NOTICE OF REMOVAL

7753823-v2

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF REMOVAL
## (DIVERSITY-CLASS ACTION FAIRNESS ACT)

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, Defendant THE KROGER CO. ("Kroger"), by and through its attorneys, Venable LLP, remove to this Court the action titled *Anna Ortega, on Behalf of Herself and All Others Similarly Situated, v. The Kroger Co.*, Case No. BC536034 (the "Action"), which was originally filed in the Superior Court of the State of California for the County of Los Angeles.  As grounds for removal, Kroger states as follows:

1.      As set forth below, this Court has original jurisdiction over this putative class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because it is between citizens of different states, the putative class has more than 100 members, and the amount in controversy exceeds $5,000,000, exclusive of costs and interest.

2.      By filing this Notice of Removal, Kroger does not intend to waive, and hereby reserves, any objection as to venue, the legal sufficiency of the claims alleged in the Action and all other defenses.  Kroger reserves the right to supplement and amend this Notice of Removal.

3.      On February 11, 2014, Anna Ortega commenced this putative class action by filing a Complaint in the Los Angeles County Superior Court (the "Complaint" or "Compl.").  (Copies of the Complaint and all other papers in the Court file are attached hereto as Exhibit A.)

## BASES FOR REMOVAL

4.      The Class Action Fairness Act of 2005 ("CAFA") creates federal jurisdiction over lawsuits in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," and involves a putative class that consists of more than 100 members.

1

1    28 U.S.C. §§ 1332(d)(2)(A) and (d)(5).  Each of these three requirements is met,

2    and none of the exceptions to CAFA jurisdiction apply here.

3                          **DIVERSITY OF CITIZENSHIP**

4          5.     In the instant circumstances, there is diversity of citizenship.  "The

5    district courts shall have original jurisdiction of any civil action in which . . . any

6    member of a class of plaintiffs is a citizen of a State different from any defendant."

7    28 U.S.C. §§ 1332(d)(2)(A).

8          6.     Plaintiff is an individual residing in Los Angeles County, California.

9    Compl. ¶ 12.

10         7.     Kroger is an Ohio corporation with its principal place of business in

11   Cincinnati, Ohio.  *Id.* ¶ 16.

12         8.     Because the Plaintiff is a citizen of a different State than Kroger, the

13   diversity requirement set forth in 28 U.S.C. §§ 1332(d)(2) is satisfied.

14         **THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000**

15         9.     Kroger denies any liability for the claims asserted in the Complaint,

16   and further denies that Plaintiff has any right to any relief for herself or for

17   members of the putative class.  Nevertheless, for purposes of removal, the

18   Complaint as pled gives rise to an amount in controversy which well exceeds

19   $5,000,000.

20         10.    The Complaint does not allege a specific amount in controversy.

21   Instead, by way of relief, the Complaint seeks, *inter alia*, restitution to Plaintiff and

22   all putative class members, disgorgement of amounts received by Kroger from

23   sales of the products at issue in California, injunctive relief barring Kroger from

24   selling chickens containing the labels at issue, an award of reasonable costs and

25   attorneys' fees, and pre-judgment interest.  Compl. at p. 27 ("Prayer for Relief").

26         11.    To establish the amount in controversy required for removal, the

27   defendant may submit "summary-judgment-type evidence." *See Abrego Abrego v.*

28   *The Dow Chemical Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (quoting *Singer v. State*

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

2

1   *Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

2   　　　12.　　The restitution and disgorgement relief sought by Plaintiff are more

3   than sufficient by themselves to satisfy the amount in controversy requirement.

4   The Complaint does not quantify the amounts sought for restitution or

5   disgorgement.  Nevertheless, the request for restitution may fairly be understood to

6   seek recovery of all amounts paid by putative class members to purchase "Simple

7   Truth" products bearing the "Raised in a Humane Environment" and "Cage Free"

8   labels. *See Watkins v. Vital Pharm., Inc.*, 720 F.3d 1179 (9th Cir. 2013) (finding a

9   declaration stating that total sales of a product exceeded $5 million sufficient for

10  removal under CAFA where plaintiff class sought restitution, disgorgement of

11  profits, and attorney's fees).

12  　　　13.　　Here, as shown in the accompanying Declaration of Virginia Boss,

13  Brand Manager for Corporate Brands at Kroger ("Boss Declaration"), putative

14  class members paid more than $5 million between June 10, 2012 and February 16,

15  2014 to purchase the "Simple Truth" brand chicken products at issue in the

16  Complaint.[1]  As the restitution claim seeks all of these revenues as damages, the

17  amount in controversy exceeds the $5 million threshold in 28 U.S.C. § 1332(d)(6).

18  　　　14.　　Moreover, in computing the aggregate amount under CAFA, the

19  Court may consider the cost of complying with the requested injunctive relief, as

20  well as potential recovery of attorneys' fees. *See Yeroushalmi v. Blockbuster, Inc.*,

21  No. CV 05-225-AHM (RCX), 2005 WL 2083008, at *5 (C.D. Cal July 11, 2005).

22  These amounts, while not quantified here, would further increase the amount in

23  controversy above the CAFA threshold.

24

25

26

27  [1] The Declaration is being lodged with the Clerk along with an Application to File
    Under Seal because it contains confidential and sensitive Kroger business
    information.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7753823-v2                                                    NOTICE OF REMOVAL

## **THE PUTATIVE CLASS EXCEEDS 100 MEMBERS**

15.     The putative class consists of more than 100 members.  The Complaint seeks to certify a class of [a]ll persons who purchased any Simple Truth chicken product labeled "Raised in a Humane Environment" and "Cage Free" in the State of California."  Compl. ¶ 90.  The Complaint alleges that "given the immense sales volume of Simple Truth chicken products, Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable."  Compl. ¶ 92.

16.     The Boss Declaration confirms that there are well more than 100 members of the putative class.  Kroger does not have information identifying all purchasers of "Simple Truth" brand chicken products in California.  However, Kroger does maintain data concerning the gross sales volume of "Simple Truth" chicken products at Ralphs, Foods Co, and Kroger-affiliated Food 4 Less stores.  According to Kroger's data, in the 617 days between June 10, 2012, and February 16, 2014, there were over $5 million in sales in the State of California of the "Simple Truth" chicken products at issue in the Complaint.  Boss Decl. ¶ 4.

17.     Given the high volume of sales of "Simple Truth" chicken products in California, there is no realistic possibility that the number of putative class members is less than 100.  Boss Decl. ¶ 5-6.  Accordingly, the evidence demonstrates that the putative class exceeds 100 members, as required by 28 U.S.C. §§ 1332.

## **NOTICE OF REMOVAL TIMELY FILED**

18.     This Notice of Removal has been timely filed within 30 days of Kroger's receipt of a copy of the initial complaint.  28 U.S.C. § 1446(b)(1).  Attached hereto as Exhibit B is a true and accurate copy of the notice from Corporation Service Company, Kroger's agent for service of process in Delaware, informing Kroger that the Complaint in this action was served February 12, 2014.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7753823-v2                                                                NOTICE OF REMOVAL

## **Notice To Plaintiffs And State Court**

19.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being promptly served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

DATED:  March 14, 2014                    VENABLE LLP

By: /s/ Jennifer Levin
      Roger A. Colaizzi (*Pro hac vice* to be filed)
      Edward P. Boyle (*Pro hac vice* to be filed)
      Jennifer Levin
      Attorneys for Defendant The Kroger Co.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

7753823-v2                                                      NOTICE OF REMOVAL

EXHIBIT A

FILED
Superior Court of California
County of Los Angeles

FEB 10 2014

Sherri R. Carter, Executive Officer/Clerk
By _____ Shaunya Bolden, Deputy

FILED
Superior Court Of California
County Of Los Angeles

FEB 17 2014

Sherri R. Carter, Executive Officer/Clerk.
By _____ Judi Lara , Deputy

1  Michael McShane (SB 127944)
2  Dana M. Isaac (SB 278848)
   AUDET & PARTNERS, LLP
3  221 Main Street, Suite 1460
   San Francisco, CA 94105
4  Tel: (415) 568-2555
   Fax: (415) 568-2556
5
6  Jonathan K. Tycko (*Pro Hac Vice to be filed*)
   Jeffrey D. Kaliel (SB 238293)
7  TYCKO & ZAVAREEI LLP
   2000 L Street, N.W., Suite 808
8  Washington, D.C. 20036
   Tel: (202) 973-0900
9  Fax: (202) 973-0950
10
11 Cheryl Leahy (SB 270665)
   Lisa Winebarger (SB 286773)
12 COMPASSION OVER KILLING
   19401 S. Vermont Ave., Ste. J105
13 Torrance, CA 90502
   Tele: (310) 217-1519
14

DEPT. 311
SHEPARDWILEYJR

15 **Attorneys for Plaintiff**

16           SUPERIOR COURT OF CALIFORNIA
17        IN AND FOR THE COUNTY OF LOS ANGELES

18                                      BC536034
19 ANNA ORTEGA, on Behalf of Herself and
   All Others Similarly Situated,        Case No.
20
         Plaintiff,                      CLASS ACTION COMPLAINT
21
         vs.
22                                       JURY TRIAL DEMANDED
23 THE KROGER CO.
                                         BY FAX
24       Defendant.
25            CLASS ACTION COMPLAINT

26     Plaintiff Anna Ortega ("Plaintiff"), by and through her counsel, files this Complaint
27 against Defendant, The Kroger Co. ("Kroger" or "Defendant"), and states as follows:
28

CLASS ACTION COMPLAINT

**EXHIBIT A - Page 6**

## NATURE OF THE ACTION

1.     This is a proposed class action against Kroger for misleading consumers about the purportedly "humane" treatment of its store brand chickens, and for deceptively claiming its chickens are raised "cage free" in violation of California consumer protection laws and California common law, when in fact every meat chicken in the country is raised cage free.

2.     Looking to profit from growing consumer awareness of, and concern with, the treatment of farm animals raised for meat production, Kroger engaged in a deceptive and misleading marketing scheme to promote its "Simple Truth" store brand chicken as having been sourced from chickens raised "cage free in a humane environment." In fact, Simple Truth chickens are treated no differently than other mass-produced chickens on the market.

3.     These representations by Kroger are false and/or deceptive and misleading, and consumers do not receive their intended benefit of the bargain when they purchase premium-priced Simple Truth brand chicken.

4.     Production codes included on Simple Truth brand chicken sold in California indicate that Simple Truth brand chicken is produced by Perdue Farms, Incorporated ("Perdue"), a Maryland corporation. That chicken is produced at Perdue's Cromwell, Kentucky facility.

5.     Perdue's chicken treatment practices are based on the National Chicken Council's ("NCC") Animal Welfare Guidelines and Audit Checklist for Broilers ("NCC Guidelines").

5.     The NCC is an industry trade group that exists to promote and protect the interests of the chicken industry. The NCC Guidelines essentially codify industry norms, are designed to maximize efficiency and profit, and do not ensure humane treatment. Indeed, chickens produced pursuant to those guidelines are systematically subjected to extreme pain and duress.

6.     In order to encourage low production costs, the NCC Guidelines endorse and justify a system of mechanized brutality that routinely inflicts intense duress and pain on

1

CLASS ACTION COMPLAINT

**EXHIBIT A - Page 7**

1   chickens, as discussed in more detail below. These practices fall far below the level of treatment

2   that Plaintiff and other reasonable consumers find "humane."

3       7.      The NCC Guidelines are followed by virtually every other mass chicken

4   producer in the nation. Unlike Kroger, however, those producers do not make claims on their

5   chicken packaging for the uniqueness of its chicken based on the company's adherence to the

6   NCC Guidelines.

7       8.      Plaintiff and consumers were, and consumers continue to be, deceived by

8   Kroger's marketing claims.

9       9.      Plaintiff now brings this suit to end Defendant's false, deceptive, and misleading

10  practices and to recover the ill-gotten gains obtained by Defendant through this deception.

11  Plaintiff therefore seeks, on behalf of herself and the proposed Class members, declaratory and

12  injunctive relief, compensatory damages, and an award of attorneys' fees and costs incurred in

13  prosecuting this action.

14                          **JURISDICTION AND VENUE**

15      10.     This Complaint is filed pursuant to California Business and Professions Code

16  Sections 17200, *et seq.*

17      11.     Venue is proper in Los Angeles County under California Code of Civil

18  Procedure Section 395.5. Defendant regularly conducts business in this County, the Plaintiff

19  resides in this County and a substantial part of the events or omissions giving rise to the claims

20  asserted herein occurred and continue to occur in this County.

21                              **PARTIES**

22      12.     Plaintiff Anna Ortega is a citizen of the State of California and a resident in the

23  City of Glendale. On several occasions beginning in January 2013, Plaintiff Ortega purchased

24  Kroger's Simple Truth products, primarily at Ralph's in Glendale, California, based upon the

25  label representations that the Simple Truth chicken was raised "in a humane environment" and

26  "cage free."

27      13.     For example, on July 19, 2013, Plaintiff Ortega purchased Simple Truth Naturals

28  chicken breasts for $8.13 from the Ralph's store located at 2600 W. Victory Blvd., Burbank, CA

---

2

1    91505. On August 19, 2013, Plaintiff Ortega again purchased Simple Truth Naturals chicken

2    breasts for $8.67 from the Ralph's store located at 1416 E. Colorado St., Glendale, CA 91205.

3          14.    As discussed in more detail below, Plaintiff Ortega relied upon the "humane" and

4    "cage free" claims in making her decision repeatedly to purchase the Simple Truth chicken, and

5    her understanding of the meaning of the raised "in a humane environment" and "cage free"

6    claims was objectively reasonable.

7          15.    As discussed in more detail below, Plaintiff Ortega suffered injury in that she

8    would not have bought the premium-priced Simple Truth chicken had she known the truth that

9    the chicken was not in fact treated humanely and had she known the "cage free" claim did not

10   distinguish Simple Truth chicken in any way from other chicken on the market.

11         16.    Defendant Kroger is a citizen of Ohio and is incorporated in no other states. It

12   maintains its principal place of business located at 1014 Vine St., Cincinnati, Ohio, 45202.

13         17.    Kroger operates supermarkets around the country under various trade names. In

14   California, Kroger trade names include Ralphs, Food 4 Less, and Foods Co.

15         18.    Kroger's store brand Simple Truth brand chicken is available at retail stores

16   throughout the United States, including Kroger-operated grocery stores throughout Southern

17   California.

18                          **SUBSTANTIVE ALLEGATIONS**

19         19.    In recent years, consumers have become significantly more aware of and

20   sensitive to the treatment of animals used in meat products, and to the negative environmental,

21   social, and health impacts of industrialized chicken production in general.

22         20.    Because of high consumer demand for more "humane" meat products and a

23   related increase in production costs, these products often command a premium price while

24   simultaneously taking away market share from similar products that do not make claims as to

25   humane treatment.

26         21.    To garner a corner of the "humane" market for itself, Kroger markets and sells

27   chicken products under its Simple Truth brand in packaging and with labels that prominently

28   tout that its chickens are raised "in a humane environment" and "cage free." As discussed in

more detail below, Kroger charged, and continues to charge, a premium price for Simple Truth brand chicken labeled as raised "in a humane environment" and "cage free."

22.     As described more fully below, Kroger's claim that its chickens are raised "in a humane environment" is false, deceptive, and misleading, and Kroger's claim that its chickens are "cage free" is used by Kroger in a way that is deceptive and misleading.

**A.     PRACTICES WHICH NECESSARILY OCCUR UNDER THE NCC GUIDELINES AND PERDUE'S "BEST PRACTICES"**

23.     The Simple Truth chicken sold in California is actually produced by Perdue at its Cromwell, Kentucky facility.

24.     According to a survey by representatives for Plaintiff, Simple Truth chicken sold in California bears the production code P-19112. This indicates that the chicken originated at Perdue's Cromwell, Kentucky facility.

25.     Perdue's chicken treatment practices are codified in the Company's "Best Practices," which themselves are based on the minimal standards developed by the industry itself – including Perdue executive Dr. Bruce Stewart Brown. These standards, on their face, necessitate inhumane treatment and further allow essentially limitless noncompliance with the NCC "standards."

26.     Because Perdue's "Best Practices" are not materially different from the NCC Guidelines, the Simple Truth chickens Perdue produced for Kroger have been subjected to inhumane handling in grow-out barns, on trucks, and by being shackled in ways that can break bones and dislocate joints.

27.     For example, according to a report describing a United States Department of Agriculture (USDA) audit that took place at Perdue's Perry, GA complex on January 9, 2012 through January 12, 2012 in connection with Perdue's claim that its chickens are raised "humanely," Perdue's program requirements relating to acceptable numbers of broken wings is materially indistinguishable from the NCC Guidelines.

28.     Because Perdue's "Best Practices" are not materially different from the NCC Guidelines, Kroger's Simple Truth brand chickens are shackled by their legs, upside-down,

while fully conscious as they are conveyed through processing facilities. This treatment is contemplated by, and permitted under the NCC Guidelines. Studies published in the peer reviewed journal *Neuroscience* suggest that upside-down leg shackling is painful for the chickens, and this pain is made worse by the fact that many meat chickens, or "broilers," suffer from abnormalities of the leg joints or bones. Moreover, hanging upside-down is a physiologically abnormal posture for chickens, and multiple studies, published in the peer reviewed journal *British Poultry Science*, have shown that inversion and shackling is traumatic and stressful. These studies have also shown that approximately 90% of birds flap their wings vigorously when forced into this position, which can lead to broken bones and dislocated joints.

29.   Perdue facilities producing Perdue brand chicken are audited according to the same "humane" standards as are facilities producing chicken sold under the Simple Truth brand name.

30.   According to a report describing an audit that took place at Perdue's Milford, DE complex on May 10, 2010 in connection with Perdue's "humane" claim, Perdue's program requirements relating to electric stunning of birds prior to slaughter are materially indistinguishable from the NCC Guidelines.

31.   Because Perdue's "Best Practices" are not materially different from the NCC Guidelines, Kroger's Simple Truth chickens are electrically shocked before being effectively rendered unconscious, if they are at all, by such electric "stunning." Kroger's Simple Truth brand chickens are electrically shocked in "stun baths," or vats of electrified water, after the birds have been shackled upside-down by their legs. This treatment, including the possibility that some percentage of birds will not be properly stunned, is contemplated by, and permitted under the NCC Guidelines. Scientific studies, including published peer reviewed articles in *The Veterinary Record* and the *Journal of Agricultural Engineering Research*, have shown that many birds experience painful electric shocks prior to being "stunned" due to wing-flapping at the entrance to the stunner. Moreover, studies published in journals such as *Poultry Science* have shown that the birds may experience electrically-induced paralysis, seizures, and cardiac arrest while still conscious.

CLASS ACTION COMPLAINT

**EXHIBIT A - Page 11**

32.     According to reports describing audits that took place at Perdue's Perry, GA complex on February 25 through March 1, 2013 and at Perdue's Milford, DE complex on May 10, 2010, Perdue's program requirements relating to the neck-cutting of birds are materially indistinguishable from the NCC Guidelines.

33.     Because Perdue's "Best Practices" are not materially different from the NCC Guidelines, at least some of Kroger's Simple Truth chickens have had their necks unsuccessfully and partially cut while fully conscious because they were ineffectively stunned as described above and slowly bleed to death while semi-conscious. The possibility that some percentage of birds will have their necks ineffectively cut is contemplated by, and permitted under the NCC Guidelines.

34.     Because Perdue's "Best Practices" are not materially different from the NCC Guidelines, at least some of Kroger's Simple Truth chickens have been drowned and scalded alive while conscious. The possibility that some live birds will enter the "scald vat" is contemplated by the NCC Guidelines. The chickens that Perdue raises are subject to conscious drowning in scalding water after the shackled birds have moved past the neck-cutting machines during processing. Ineffective stunning and neck-cutting can allow the birds to regain consciousness while "bleeding out" and enter the "scald vat" while still alive. According to industry magazine *WATT Poultry USA*, in some plants the rate of this occurring is as high as 3%.

35.     According to a report describing an audit that took place at Perdue's Rockingham, NC complex on September 13, 2010 through September 16, 2010, Perdue's program requirements relating to pre-slaughter holding of birds on transport trucks are materially indistinguishable from the NCC Guidelines.

36.     Because Perdue's "Best Practices" are not materially different from the NCC Guidelines, Kroger's Simple Truth chickens have been subjected to rough handling and crammed into stiflingly hot (or painfully cold) trucks for hours as they await slaughter, with no food or water. The NCC Guidelines provide no minimum or maximum temperatures in which the chickens may be held on the trucks, and permit the holding of chickens on trucks for up to

CLASS ACTION COMPLAINT
**EXHIBIT A - Page 12**

1  15 hours. The chickens that Perdue raises for Kroger are subject to such conditions, which
2  sometimes lead to the painful death of chickens before slaughter.

3      37.    According to a report describing an audit that took place at Perdue's Cromwell,
4  KY complex on April 23, 2012 through April 26, 2012 in connection with Perdue's "humane"
5  claim, Perdue's program requirements relating to the lighting schedule in "grow-out" sheds are
6  materially indistinguishable from the NCC Guidelines.

7      38.    Because Perdue's "Best Practices" are not materially different from the NCC
8  Guidelines, Kroger's Simple Truth chickens have been purposely deprived of the ability to
9  engage in natural resting behaviors, encouraging abnormal growth. The Simple Truth brand
10 chickens that Perdue raises are subject to continuous or near-continuous dim lighting in "grow-
11 out" sheds, resulting in sleep deprivation. This treatment is contemplated by, and expressly
12 permitted under the NCC Guidelines. Studies published in *British Poultry Science*, *Avian
13 Diseases*, and *World's Poultry Science Journal* have found that an absence of sufficient periods
14 of darkness per night precludes natural sleep and resting behavior of birds, exacerbates leg
15 disorders, can cause sudden death syndrome, and increases mortality levels. Moreover, the NCC
16 Guidelines do not require a minimum lighting intensity, and the dim, nearly continuous lighting
17 may lead to abnormal eye development, causing uncomfortable and potentially painful eye
18 disorders such as glaucoma and buphthalmia.

19     39.    Because Perdue's "Best Practices" are not materially different from the NCC
20 Guidelines, Kroger's Simple Truth chickens, as minutes-old chicks, are thrown around during
21 the highly mechanized separation from their shells, with many severely injured by the process.
22 The possibility of this happening is contemplated by, and permitted under the NCC Guidelines.
23 Industry advisor and welfare expert Dr. Temple Grandin has stated that this activity should
24 constitute an automatic failure of any welfare audit, but it does not pursuant to the NCC
25 Guidelines.

26     40.    Because Perdue's "Best Practices" are not materially different from the NCC
27 Guidelines, at least some of Kroger's Simple Truth chickens have suffered continuously from
28 cardiovascular problems, painful bone deformities, ruptured tendons, and lameness throughout

7

1  their short lives. The Simple Truth brand chickens that Perdue raises for Kroger are plagued

2  with chronic health problems because Perdue, like other major chicken producers, selectively

3  breeds meat, or "broiler" chickens, for unnaturally fast growth. Emeritus professor John

4  Webster of the University of Bristol School of Veterinary Science has stated that "[b]roilers are

5  the only livestock that are in chronic pain for the last 20 per cent of their lives. They don't move

6  around, not because they are overstocked, but because it hurts their joints so much." Perdue

7  raises chickens that spend a full fifth of their short lives in chronic pain so severe that it

8  effectively immobilizes them. Perdue takes no steps to mitigate or remedy these health

9  problems.

10      41.    Because Perdue's "Best Practices" are not materially different from the NCC

11  Guidelines, and because, as described above, these chickens frequently suffer from painful bone

12  deformities and leg problems, at least some of Kroger's Simple Truth chickens have been

13  unable to walk more than five feet at a time and have exhibited gait defects. The chickens that

14  Perdue raises for Kroger are provided no veterinary care or relief even if they are unable to walk

15  more than 5 feet or exhibit gait defects. That some birds will exhibit gait defects and be unable

16  to walk more than five feet at a time and not receive veterinary care is contemplated by, and

17  permitted under, the NCC Guidelines.

18      42.    In short, the Simple Truth chicken sold by Kroger and produced by Perdue was

19  the product of an NCC-designed and supported production system that is, at its core, not

20  humane, because the chickens were and are subject to one or more of the practices described

21  above.

22  **B.   SIMPLE TRUTH CHICKEN IS PRODUCED WITH THE SAME PROCESSES**
23  **USED ACROSS THE MASS-PRODUCED CHICKEN INDUSTRY**

24      43.    According to the NCC, it is "a full-service trade association that promotes and

25  protects    the    interests    of    the    chicken    industry,"    NCC,    Overview,

26  http://www.nationalchickencouncil.org/about-ncc/overview/ (last visited Sept. 16, 2013), and

27  "[a] substantial portion of NCC's budget is used to promote the consumption of chicken and to

28  foster    a    positive    public    image    for    the    chicken    industry."    NCC,    Structure,

8

1    http://www.nationalchickencouncil.org/about-ncc/structure/ (last visited Sept. 16, 2013). NCC

2    member companies account for approximately ninety five percent (95%) of meat chickens

3    produced in the United States. *Id.*

4         44.    According to the "AMS Weekly Activity Report" for June 2, 2009, AMS reports

5    that Dr. Bruce Stewart Brown, Perdue's own Senior Vice President for Food Safety and Quality,

6    headed a small group of industry scientists and veterinarians who worked to develop recent

7    revisions to the NCC Guidelines. The NCC Guidelines are not promulgated by a neutral third-

8    party, and, expectedly, their primary purpose is to support the financial motivations of the

9    chicken industry, including Perdue.

10        45.    The NCC Guidelines do nothing more than codify industry norms, which do not

11   ensure humane treatment of chickens and which in fact systematically subject chickens to

12   extreme pain and duress.

13        46.    In order to encourage low production costs, the NCC Guidelines authorize and

14   justify a system of mechanized chicken production that routinely inflicts intense duress and

15   pain.

16        47.    Multiple sources indicate that Perdue's chicken treatment practices are materially

17   indistinguishable from the NCC Guidelines:

18        48.    In a May 28, 2010 letter from Herbert D. Frerichs, Jr., General Counsel for

19   Perdue, to Cathy Liss, President of the Animal Welfare Institute, Perdue's General Counsel

20   stated: "The NCC Guidelines represent the basis for humane care in raising poultry in a

21   commercial setting . . . In respect to Perdue, these NCC Guidelines were the basis for our

22   welfare program referred to as 'Humanely Raised.'" (Emphasis added). The letter further stated

23   that "Perdue's practices . . . are compliant with the [NCC's] Animal Welfare Guidelines."

24        49.    According to a document from the USDA's Agricultural Marketing Service

25   ("AMS") entitled "Audit Section Weekly Activity," on December 17, 2008, AMS officials and

26   Perdue representatives met to discuss a "Humanely Raised" claim Perdue makes on its own

27   brand of chicken. The document stated that "Perdue's specific processes associated with the

28

9

CLASS ACTION COMPLAINT

**EXHIBIT A - Page 15**

1   'Raised "in a humane environment"' claim are based on the [NCC's] Animal Welfare

2   Guidelines."

3           50.     On March 12, 2010, David Hermes, Regional Veterinary Services Manager at

4   Perdue's Cromwell, KY complex (which processes Simple Truth brand chicken) sent an email

5   to Jack Boucher, Assistant National Supervisor of Audits for USDA AMS's Poultry Programs,

6   explaining that Perdue was in the process of revising a manual to reflect recent changes in the

7   NCC Guidelines. The email stated that "[Perdue's] 'Humanely Raised' PVP audit instrument

8   contains the same criteria as the NCC audit instrument . . . ." (Emphasis added). Because the

9   audit criteria Perdue uses are the same criteria used for NCC audits, there is no meaningful

10  difference between the company's treatment standards and the NCC standards.

11          51.     The audit checklist used by USDA personnel during audits of Perdue's

12  hatcheries, "grow-out" farms, and slaughtering facilities is in all material respects identical to

13  the audit checklist contained in the NCC Guidelines. Specifically, the document states that it is

14  the "NCC Animal Welfare Audit Checklist 16 April 2010 edition," and that it has been

15  "Revised for USDA, AMS Process Verified Program Audits." The document further states that

16  it has been "Revised only to remove point values from the checklist. No points are awarded."

17  Apart from the revision to remove point values, the audit checklist is identical to the NCC's

18  checklist, and all of the audit criteria are identical.

19          52.     The NCC Guidelines are followed by almost every other mass chicken producer

20  in the nation. Tyson Foods, Inc. (ranked #1), Pilgrim's Pride (ranked #2), Sanderson Farms, Inc.

21  (ranked #3), Koch Foods (ranked #5), and Peco Foods Inc. (ranked # 8) all expressly state on

22  their respective websites that their company adheres to the NCC Guidelines. Additionally,

23  House of Raeford Farms, Inc. (ranked #9) has publicly stated that it adheres to the NCC

24  Guidelines.

25          53.     The NCC's website states that the NCC Guidelines have been "widely adopted

26  within the chicken industry." See http://www.nationalchickencouncil.org/industry-

27  issues/animal-welfare-for-broiler-chickens/ (last visited Sept. 16, 2013).

28

CLASS ACTION COMPLAINT

**EXHIBIT A - Page 16**

54.    With the exception of Perdue, no other mass chicken producer makes claims on its packaging for the uniqueness of its chicken based on adherence to the NCC Guidelines.

## C.    NCC GUIDELINES ALLOW SIGNIFICANT DEVIATION FROM ALREADY-MEAGER ANIMAL TREATMENT STANDARD

55.    In order to encourage low production costs, the NCC Guidelines allow significant deviation and noncompliance with their already-meager animal treatment standards. Indeed, the NCC Guidelines are riddled with huge loopholes for nonconformance. A poultry producer can still claim to be "in conformity" with the NCC Guidelines even while failing to comply with numerous provisions.

56.    Moreover, while the audit checklist identifies certain occurrences as "major non-conformances," none of these occurrences result in the automatic failure of an audit: the checklist simply states in vague terms that the non-conformances must be "corrected" before the audit of that particular area can move on. Major non-conformances include: live chicks in the trash at hatcheries; survival of chicks after euthanasia (i.e., live chicks suffocating in the trash); abuse of birds during catching and transportation; pre-slaughter caged holding times greater than 15 hours; live birds in the "Dead On Arrival" bins at the slaughter plant; and birds with uncut carotid arteries proceeding to the "scald vat" at the slaughter plant where they are submersed in scalding water while alive.

57.    Since all that is required even during an NCC audit is "correction" of the problem, in day-to-day practice, when chicks are found crushed but alive in the trash, or chickens have their throats torn open by ineffective neck cutting machines while conscious, there may be temporary adjustments, but there is nothing in the NCC Guidelines requiring systematic measures to prevent even "major non-conformances" from recurring every single day. In other words, the "standards" themselves expressly allow for massive suffering for the several billion birds handled in conformity with them every year.

58.    The NCC Guidelines do not, in short, equal "humane" treatment, but are instead a codification of existing industry standards. Such standards, as discussed below, are widely understood by consumers *not* to be humane.

11

59. These uniform industry practices of systemized and routine cruelty expressly allowed for by the NCC Guidelines cannot justify a claim of raised "in a humane environment."

60. Perdue exacerbates these already-low and cruel standards by violating those very standards. Indeed, a number of major non-conformances were found during USDA audits of various Perdue facilities, including facilities used to produce chicken products ultimately marketed as raised "in a humane environment." According to audit reports from USDA's AMS, these non-conformances include:

- Large numbers of birds with broken wings at processing plants (at Perdue's Perry, GA slaughtering complex in early January, 2012, which produces both Simple Truth and Perdue brand products, at Perdue's Rockingham, NC complex in December 2012, which produces Perdue brand products, at Perdue's Milford, DE complex in October 2012, which produces Perdue brand products, and again at Perdue's Dillon, SC complex on June 13, 2012, which produces Perdue brand products);

- Live chicks in the hatchery waste stream (at Perdue's Milford, DE complex in late February, 2012, which produces Perdue brand products, and again at Perdue's Murfreesboro, NC hatchery on April 12, 2010, which produces Perdue brand products);

- Excessive pre-slaughter holding times in trucks outside processing plants (at Perdue's Accomac, VA slaughtering complex on April 16, 2010, which produces Perdue brand products);

- Improper stunning of birds as they proceed to the neck-cutting machines, which means birds may have been fully conscious when their throats were mechanically cut (at Perdue's Milford, DE slaughtering complex on April 19, 2010, which produces Perdue brand products);

- Ineffective neck-cutting devices (at Perdue's Perry, GA complex in early January 2012 and again in late February 2013, which produces both Simple Truth and Perdue brand products, at Perdue's Milford, DE complex in October 2012, which

CLASS ACTION COMPLAINT
**EXHIBIT A - Page 18**

produces Perdue brand products, at Perdue's Lewiston, NC slaughtering complex on April 12, 2010, and again at Perdue's Milford, DE slaughtering complex on April 19, 2010, which both produce Perdue brand products); and

- Excessive ammonia levels – nearly twice what the NCC Guidelines allow – in the "grow-out" sheds (at Perdue grow-out farms associated with its Cromwell, KY complex in late April 2012, on May 13, 2009, and again in December, 2009, which produce both Simple Truth and Perdue brand products).

61.    All of these "non-conformances" occurred during *pre-scheduled, announced* audits by AMS – audits for which Perdue had advance notice and ample time to prepare. Because each of the above non-conformances occurred at Perdue plants under the same corporate oversight, organized in the same way, using the same industry-wide processes, the same industry-wide equipment, and following the same industry-wide NCC Guidelines, such non-conformances likely occur regularly at all Perdue plants, including those used to produce Simple Truth branded products for Kroger.

62.    More importantly, even if Perdue followed the NCC Guidelines perfectly and never failed to meet any requirement, every Simple Truth brand chicken produced by Perdue would have been subjected to or derived from the cruel practices sanctioned by the NCC Guidelines, such as sleep deprivation, conscious, upside-down shackling, and dipping in vats of electrified water. In addition, some portion of chickens are also subjected to further cruelty, based on disregard for the already-cruel NCC Guidelines.

63.    Plaintiff has no ability to witness Perdue's practices as described above because they all occur behind closed doors at properties the company owns or otherwise controls access to. As such, Perdue has unique access to and control over the facts regarding day to day suffering of the birds it uses for Kroger's Simple Truth chicken.

D.    **THE RAISED "IN A HUMANE ENVIRONMENT" LABEL CLAIM DECEIVED PLAINTIFF**

64.    Plaintiff Ortega believed that the raised "in a humane environment" label claim meant that Simple Truth chickens were treated humanely throughout life, and that they had a

1 | quick and painless death. Plaintiff Ortega would not have purchased the Simple Truth chicken
2 | but for the raised "in a humane environment" label.

3 |      65.    Plaintiff Ortega believed that the raised "in a humane environment" label claim
4 | meant that Simple Truth chickens were treated humanely throughout life, and would not have
5 | purchased the Simple Truth chicken if she had known that the chickens were selectively bred for
6 | extremely fast growth, causing chronic health problems, including painful bone deformities.

7 |      66.    Plaintiff Ortega believed that the raised "in a humane environment" label claim
8 | meant that Simple Truth chickens were treated humanely throughout life, and would not have
9 | purchased the Simple Truth chicken if she had known that the chickens were kept in barns and
10 | subjected to near continuous dim lighting, preventing natural rest and sleep behaviors.

11 |      67.    Plaintiff Ortega believed that the raised "in a humane environment" label claim
12 | meant that Simple Truth chickens were treated humanely throughout life, and would not have
13 | purchased the Simple Truth chicken had she known that the company failed to provide
14 | veterinary care for chickens unable to walk more than five feet at a time, or exhibiting lameness
15 | or gait defects.

16 |      68.    Plaintiff Ortega believed that the raised "in a humane environment" label claim
17 | meant that Simple Truth chickens were treated humanely throughout life, including that birds
18 | were handled and treated humanely when they were being transported to slaughter. Plaintiff
19 | Ortega would not have purchased the Simple Truth chicken if she had known that this was not
20 | the case.

21 |      69.    Plaintiff Ortega believed that the raised "in a humane environment" label claim
22 | meant that Simple Truth chickens were treated humanely throughout life, and would not have
23 | purchased the Simple Truth chicken if she had known that, prior to being slaughtered, the
24 | chickens had been shackled upside down while fully conscious.

25 |      70.    Plaintiff Ortega believed that the raised "in a humane environment" label claim
26 | meant that Simple Truth chickens were treated humanely throughout life, and would not have
27 | purchased the Simple Truth chicken if she had known that, prior to being slaughtered, the
28 | shackled, fully conscious chickens would be dropped into a "bath" of electrified water.

71.     Plaintiff Ortega believed that the raised "in a humane environment" label claim meant that Simple Truth chickens were treated humanely throughout life, and would not have purchased the Simple Truth chicken if she had known that, prior to being slaughtered, it was possible that the birds could be ineffectively "stunned" by the process involving the stun bath, and that some shackled birds could be conveyed to the neck-cutting blade that kills them while fully conscious.

72.     Plaintiff Ortega believed that the raised "in a humane environment" label claim meant that Simple Truth chickens were treated humanely throughout life, and would not have purchased the Simple Truth chicken if she had known that some birds could miss the cutting blade, or be ineffectively cut by the blade, and enter a vat of scalding water while alive, and conscious.

73.     Plaintiff's interpretation that processes which occur directly prior to the death of the chickens at the slaughter plant were covered by the Simple Truth raised "in a humane environment" claim is found in the fact that Perdue itself specifically included slaughter and its precursors in the definition of its own "Humanely Raised" claim. The Official Listing of Approved USDA Process Verified Programs, makes clear that Perdue has specifically included "Processing" -- industry terminology for the slaughtering process -- within the scope of its "Humanely Raised" claim.

74.     Further basis for the reasonableness of the Plaintiff's label interpretations which involve slaughter is found in the fact that the USDA audited each step of the slaughter process at plants producing Simple Truth brand chicken when it evaluated Perdue's "Humanely Raised" claim.

**E.     PERDUE'S USE OF THE "CAGE FREE" LABEL CLAIM DECEIVED PLAINTIFF**

75.     Kroger's Simple Truth labels prominently tout that chickens are raised "cage free."

76.     While cages are commonly used to house chickens in egg production operations, no chickens raised for meat ("broilers") are housed in cages in virtually any operation in the United States.

77.     The Simple Truth "cage free" label misrepresents to consumers that Kroger's Simple Truth chickens are raised differently, and more humanely, than competitors' chickens when this is in fact not the case.

78.     Plaintiff Ortega believed that the "cage free" label meant that Kroger's Simple Truth chickens are raised differently, and more humanely, than competitors' chickens when this is in fact not the case.

79.     Based on Kroger's raised "in a humane environment" and "cage free" labels (collectively "the labels"), Plaintiff Ortega believed that Simple Truth chicken was different and in material respects superior to standard mass produced industry chicken. Indeed, that is why she was willing to pay a premium price for Simple Truth chicken.

**F.    KROGER WRONGED PLAINTIFF AND CONSUMERS BY CHARGING PREMIUM PRICES FOR CHICKEN THAT WAS HANDLED IN A SUBSTANTIALLY IDENTICAL MANNER TO STANDARD MASS PRODUCED POULTRY INDUSTRY CHICKEN**

80.     As discussed above, in all relevant respects Perdue treats the chickens it produces under the Kroger Simple Truth brand name in the same manner as other large chicken producers, as all use the NCC Guidelines.

81.     Because a consumer pays more for Simple Truth products marketed as raised "in a humane environment" and "cage free" while the birds that become such products are treated in all relevant respects identically to the vast majority of other chicken products which lack the label, Kroger perpetrates a fraud on its consumers.

82.     Plaintiff and other consumers paid premium prices for Simple Truth chicken.

83.     Plaintiff and other consumers would not have purchased Simple Truth chicken at premium prices, but for the false and misleading humane marketing claims made by Kroger.

CLASS ACTION COMPLAINT
**EXHIBIT A - Page 22**

84.     Plaintiff and other consumers have been damaged in the amount of the difference between the price of Simple Truth chicken and the actual retail value of standard, mass-produced chicken not marketed as raised "in a humane environment" and "cage free."

85.     In November 2013, Plaintiff's counsel surveyed grocery stores in California that carried Simple Truth brand chicken products. Plaintiff compared the price per pound of several Simple Truth brand chicken cuts against corresponding cuts of chicken from another brand found in the same aisle of the same store, on the same date. For each comparison, the percent difference was calculated, and then the average percent difference of all of the comparisons was calculated.

86.     In each instance, Simple Truth was more expensive than the other brand.

87.     In a price survey of Simple Truth whole chicken, chicken breasts, chicken thighs, and drum sticks and corresponding cuts of another brand, the Simple Truth chicken products were between 18% and 75% more expensive per pound.

88.     On average, the surveyed Simple Truth chicken was 41% more expensive than chicken that was similar in other respects but lacked a "humane" and "cage free" claim.

## CLASS ALLEGATIONS

89.     Plaintiff brings this lawsuit on behalf of herself and the proposed class members under Cal. Civ. Proc. Code § 382. The proposed Class consists of:

> All persons who purchased any Simple Truth chicken product
> labeled raised "in a humane environment" and "cage free" in the
> State of California (the "Class").

90.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

91.     Specifically excluded from the Class are officers and directors of the Defendant, members of the immediate families of the officers and directors of the Defendant, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

CLASS ACTION COMPLAINT

**EXHIBIT A - Page 23**

92.     At this time, Plaintiff does not know the exact number of Class members; however, given the immense sales volume of Simple Truth chicken products, Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

93.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a.  Whether Kroger labeled, marketed, advertised and/or sold its Simple Truth chicken products to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or representations concerning the humane treatment of animals used in the production of such products; the "cage free" raising of chickens; and the unfounded distinction between chicken products marketed and sold at retail under the Simple Truth brand and the chicken of competitors;

      b.  Whether Kroger misrepresented material facts in connection with the sales of its chicken products;

      c.  Whether Kroger participated in and pursued the common course of conduct complained of herein;

      d.  Whether Kroger's marketing, labeling, and/or selling of its Simple Truth products as raised "in a humane environment" and "cage free" constitutes a deceptive act or practice in the conduct of business, trade, or commerce in California; and

      e.  Whether Kroger breached an express warranty.

94.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased a Simple Truth product bearing the raised "in a humane environment" and "cage free" packaging or label in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

18

95.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

96.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

97.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

98.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

99.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make injunctive and declaratory relief with respect to the Class as a whole appropriate.

## COUNT I
### Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200
### Fraudulent Prong

100.     Kroger's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code Section 17200, et seq.

101.     Kroger's conduct violates the UCL's "fraudulent" prong in the following respects, among others:

a.     As set forth above, the packaging and labeling of Kroger's Simple Truth chicken products as raised "in a humane environment" is false, deceptive and misleading because they cause consumers to believe that Kroger's products are different from those of its competitors in that the animals it uses are treated humanely throughout their entire lives.

19

b. Kroger's raised "in a humane environment" Simple Truth chickens are not treated humanely or in any material respects differently from other brands of chicken.

c. As set forth above, the packaging and labeling of Kroger's Simple Truth chicken products as "cage free" is deceptive and misleading because, in truth, no broiler chickens are raised in cages and because it causes consumers to believe that the manner in which Kroger treats its chickens is superior to that of other brands.

d. Kroger designed the false, deceptive, and misleading packaging and labeling with intent to sell, distribute and increase the consumption of its Simple Truth brand chicken products.

102. As a result of Kroger's violations of the UCL's "fraudulent" prong, Plaintiff and members of the Class have purchased, and/or will continue to purchase, Simple Truth chicken, or have paid, and/or will continue to pay, excessive amounts of money for Simple Truth chicken and thereby have suffered and will continue to suffer actual damages.

103. Pursuant to California Business and Professions Code Section 17203, Plaintiff and the Class are therefore entitled to, *inter alia*:

a. An order requiring Kroger to cease the unlawful and unfair acts alleged herein;

b. Full restitution of all monies paid to Kroger for Simple Truth chicken, pursuant to California Code of Civil Procedure Section 384;

c. Pre-judgment interest at the highest rate allowable by law; and

d. Payment of their attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure Section 1021.5.

## COUNT II
### Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200
### Unlawful Prong

104. Plaintiff repeats the preceding paragraphs.

20

105.    Kroger's conduct violates the UCL's "unlawful" prong in the following respects, among others:

Kroger's practices relating to the marketing of Simple Truth chicken as raised "in a humane environment" and "cage free" violate California Civil Code Sections 1770(a)(2), (5), (7) and (8), and, as a result, constitute unlawful business acts or practices within the meaning of the UCL.

106.    As a result of Kroger's violations of the UCL's "unlawful" prong, Plaintiff and members of the Class have purchased, and/or will continue to purchase, Simple Truth chicken, or have paid, and/or will continue to pay, excessive amounts of money for Simple Truth chicken and thereby have suffered and will continue to suffer actual damages.

107.    Pursuant to California Business and Professions code section 17203, Plaintiff and the California State Subclass are therefore entitled to, *inter alia*:

    a.  An order requiring Kroger to cease the unlawful and unfair acts alleged herein;

    b.  Full restitution of all monies paid to Kroger for Simple Truth chicken, pursuant to California Code of Civil Procedure Section 384;

    c.  Pre-judgment interest at the highest rate allowable by law; and

    d.  Payment of their attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure Section 1021.5.

## COUNT III
### Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200
### Unfair Prong

108.    Plaintiff repeats the preceding paragraphs.

109.    Kroger's conduct violates the UCL's "unfair" prong in the following respect, among others:

110.    Kroger's practices relating to the marketing of Simple Truth chicken as raised "in a humane environment" and "cage free" violate constitute unfair business acts or practices within the meaning of the UCL.

1    111.   The harm to Plaintiff and the Class arising from Kroger's unfair practices
2 outweighs the utility, if any, of those practices.

3    112.   Kroger's unfair business practices relating to the marketing of Simple Truth
4 chicken as raised "in a humane environment" and "cage free" are immoral, unethical,
5 oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and
6 members of the Class.

7    113.   As a result of Kroger's violations of the UCL's "unfair" prong, Plaintiff and
8 members of the Class have purchased, and/or will continue to purchase, Simple Truth chicken,
9 or have paid, and/or will continue to pay, excessive amounts of money for Simple Truth chicken
10 and thereby have suffered and will continue to suffer actual damages.

11    114.   Pursuant to California Business and Professions Code Section 17203, Plaintiff
12 and the California State Subclass are therefore entitled to, inter alia:

13         a.  An order requiring Kroger to cease the unlawful and unfair acts alleged
14             herein;

15         b.  Full restitution of all monies paid to Kroger for Simple Truth chicken,
16             pursuant to California Code of Civil Procedure Section 384;

17         c.  Pre-judgment interest at the highest rate allowable by law; and

18         d.  Payment of their attorneys' fees and costs pursuant to, inter alia, California
19             Code of Civil Procedure Section 1021.5.

20                              **COUNT IV**
21                          **(Fraud in the Inducement)**

22    115.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth
23 herein.

24    116.   Kroger has marketed and sold chicken products under its Simple Truth brand
25 with packaging and labeling prominently displaying claims that the chickens were raised "in a
26 humane environment." These claims are false and were known to be false when made, and
27 constitute fraud.

28

CLASS ACTION COMPLAINT
**EXHIBIT A - Page 28**

117.   The elements of common law fraud include the following: 1) Defendant made a material misrepresentation of a presently existing or past fact; 2) Defendant made the misrepresentation with knowledge or belief that it was false; 3) Defendant made the misrepresentation with the intent that the plaintiff rely upon the fact; 4) Plaintiff reasonably relied on the fact; and 5) as a result of the reliance, Plaintiff suffered damages.

118.   Kroger represented, marketed, and sold its chicken products as raised "in a humane environment" when, in fact, they were not. Kroger knew its raised "in a humane environment" claim to be false regarding the products it so labeled. Kroger knew or had reason to know that a growing number of consumers are concerned with the treatment of animals raised for food and are willing to pay a premium for food products they perceive to be humane.

119.   Kroger knew or believed that Plaintiff and reasonable consumers would not consider the manner in which its chickens are raised and slaughtered to be "humane." Kroger was fully aware of the practices by which Perdue raises and slaughters its chickens, and knew that these practices were no different than those of other major chicken producers in the United States. Kroger knew that reasonable consumers, concerned with the manner in which farm animals are often treated by large producers, seek out products distinguished as "humane" because they consider those products to be different than, and preferable to, products without that distinction.

120.   Kroger intended that consumers rely on the claim that its chickens were raised "in a humane environment" and that such claim would induce consumers to buy their products for a premium price. Kroger deliberately led consumers, including Plaintiff and the putative Class, to believe falsely that the products they were purchasing were raised "humanely" and therefore differently, than competitors' products or their own other products.

121.   Plaintiff and the putative Class relied on Kroger's claims that its chickens were raised "in a humane environment." Plaintiff's and the putative Class' reliance was reasonable on its face, particularly given the appearance and labeling of the products.

122.   Kroger's fraudulent conduct damaged Plaintiff and the putative Class in the full amount of the price paid for Simple Truth chicken. Plaintiff and the putative Class suffered

23

1    damages because they were deceived into buying Simple Truth chicken products, believing the

2    chickens to have been raised "in a humane environment." Kroger's claim that its chickens are

3    raised "in a humane environment" tainted the purchasing decisions of Plaintiff and the putative

4    Class, and caused them to purchase chicken they would otherwise not have purchased. Had

5    Plaintiff and the putative Class known that Simple Truth chicken was not materially

6    distinguishable from conventionally produced chicken, Plaintiff and the putative Class would

7    not have purchased Kroger's product, nor any mass-produced chicken.

8        123.    Alternatively, Kroger's fraudulent conduct damaged Plaintiff and the putative

9    Class in the amount of the difference between the price of Simple Truth chicken and the actual

10   retail value of standard, mass-produced chicken not marketed as raised "in a humane

11   environment." Plaintiff and the putative Class suffered damages because they were deceived

12   into buying and paying a premium for chicken products that they believed to be raised "in a

13   humane environment," and therefore different from the majority of similar products on the

14   market, when in fact they were not. Neither Plaintiff nor any putative Class member would have

15   purchased Kroger's products at a premium price had they known the truth.

16                                   **COUNT V**
                              **(Negligent Misrepresentation)**
17

18       124.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth

19   herein.

20       125.    Kroger represented, marketed, and sold its chicken products as raised "in a

21   humane environment." If not deliberately fraudulent, and in the alternative to that theory, this

22   claim constitutes a negligent misrepresentation.

23       126.    Kroger made the false or deceptive claim without reasonable grounds for

24   believing them to be true.

25       127.    Plaintiff and the Class relied on Kroger's misrepresentations of fact when they

26   purchased Kroger's Simple Truth chicken products. Plaintiff and the putative Class' reliance

27   was reasonable on its face, particularly given the appearance and labeling of the products.

28

---

CLASS ACTION COMPLAINT
**EXHIBIT A - Page 30**

128.    Plaintiff and the putative Class suffered damages in the amount of the difference between the price of Simple Truth chicken and the actual retail value of standard, mass-produced chicken not marketed as raised "in a humane environment." Plaintiff and the putative Class suffered damages because they were deceived into buying and paying a premium for chicken products that they believed to be raised "in a humane environment," when in fact they were not. Neither Plaintiff nor any putative Class member would have purchased Kroger's Simple Truth products at a premium price had they known the truth.

<u>**COUNT VI**</u>
<u>**(Breach of Express Warranty)**</u>

129.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

130.    Plaintiff, and each member of the Class, formed a contract with Kroger at the time Plaintiff and the other members of the putative Class purchased Simple Truth chicken products with a raised "in a humane environment" label. The terms of that contract include the promises and affirmation of fact made by Kroger on its product labels. This product labeling constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contact between Plaintiff and the members of the putative Class on the one hand, and Kroger on the other.

131.    All conditions precedent to Kroger's liability under this contract have been performed by Plaintiff and the Class.

132.    Kroger breached the terms of this contract, including the express warranties, with Plaintiff and the putative Class by not providing the product as described on the labeling.

133.    As a result of Kroger's breach of its contract and warranties, Plaintiff and the putative Class have been damaged in the amount of the difference between the price of Simple Truth chicken and the actual retail value of standard, mass-produced chicken not marketed as raised "in a humane environment."

CLASS ACTION COMPLAINT
**EXHIBIT A - Page 31**

## COUNT VII
### Violations of California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

134.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

135.    Kroger is a "person" within the meaning of Cal. Civ. Code § 1761.

136.    Plaintiff and the Class members are "consumers" within the meaning of Cal. Civ. Code § 1761.

137.    Plaintiff brings this cause of action for declaratory and injunctive relief only.

138.    Plaintiff purchased Simple Truth Chicken products for personal, family, or household use. This purchase, and the purchases by the Class members, constitutes a "transaction" within the meaning of Cal. Civ. Code § 1761.

139.    Kroger's marketing, labeling, advertising, and sales of the Simple Truth chicken violated the Consumer Legal Remedies Act in the following ways:

140.    Kroger represented that the Simple Truth chicken have characteristics which they lacked, notably that the Simple Truth chickens were humanely raised;

141.    Kroger represented that the Simple Truth chickens were of a particular standard, quality, or grade, which they were not; and

142.    Kroger advertised the Simple Truth chickens with an intent not to sell them as advertised.

143.    The Company's actions were done with a conscious disregard for the rights of Plaintiff and the Class members.

144.    The Company's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the Consumer Legal Remedies Act because Kroger continues to represent that Simple Truth chickens have characteristics and abilities which they lack.

145.    Any waiver of a claim under the Consumer Legal Remedies Act by Plaintiff and/or members of the Class is unenforceable and void.

146.    Plaintiffs request the Court enjoin Kroger from further violations.

CLASS ACTION COMPLAINT
**EXHIBIT A - Page 32**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment against the Defendant as follows:

1.      Declaring this action to be a proper class action pursuant to Cal. Civ. Proc. Code § 382 of a class of all persons who purchased Simple Truth products packaged, labeled, or advertised as raised "in a humane environment" and/or "cage free" and appointing Plaintiff as class representative for the Class and her counsel as Class Counsel;

2.      Enjoining Defendant from pursuing the acts and practices complained of herein;

3.      Declaring that Defendant's marketing of its products as raised "in a humane environment" and/or "cage free" is fraudulent, deceptive, and/or misleading, or declaring that such marketing breaches an express warranty;

4.      Ordering Defendant to pay restitution to Plaintiff and members of the Class an amount that is the equivalent to the amount acquired by means of any unfair, deceptive, fraudulent, unconscionable, or negligent act employed by Defendant as referenced in this Complaint, or any other amount authorized by statute;

5.      Ordering Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of Defendant's false, deceptive or misleading packaging, labeling, and advertising of its Simple Truth chicken products or as a result of Kroger's negligent misrepresentation of its products as raised "in a humane environment" and/or "cage free";

6.      Awarding reasonable costs and attorneys' fees;

7.      Awarding applicable pre-judgment or post-judgment interest; and

8.      Awarding such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

///

///

CLASS ACTION COMPLAINT

**EXHIBIT A - Page 33**

Dated: February 10, 2014.

AUDET & PARTNERS, LLP

*Dm Isaac*

Michael McShane (SB 127944)
mmcshane@audetlaw.com
Dana M. Isaac (SB278848)
disaac@audetlaw.com
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556

TYCKO & ZAVAREEI, LLP

Jonathan K. Tycko *(pro hac vice to be filed)*
jtycko@tzlegal.com
Jeffrey D. Kaliel (SB 238293)
jkaliel@tzlegal.com
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

COMPASSION OVER KILLING

Cheryl Leahy (SB 270665)
cleahy@cok.net
Lisa Winebarger (SB 286773)
lwinebarger@cok.net
19401 S. Vermont Ave., Ste. J105
Torrance, CA 90502
Telephone: (310) 217-1519

*Co-Counsel for Plaintiff and the Proposed Class*

28

**EXHIBIT A - Page 34**



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court Of California
County Of Los Angeles

FEB 1 1 2014

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Judi Lara

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THE KROGER CO.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ANNA ORTEGA, on behalf of Herself and All Others Similarly Situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse

111 North Hill Street
Los Angeles, CA, 90012

CASE NUMBER:
*(Número del Caso):* **BC536034**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dana Isaac, Audet & Partners, LLP, 221 Main Street, Suite 1460, San Francisco, CA, 94105 (415)568-2555

SHERRI R. CARTER

DATE: FEB 1 1 2014
*(Fecha)*

Clerk, by Judi Lara , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**EXHIBIT A - Page 35**

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
Dana M. Isaac SB278848/Michael McShane SB 127944
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA, 94105
TELEPHONE NO.: 415-568-2555      FAX NO.: 415-568-2556
ATTORNEY FOR (Name): Anna Ortega

FOR COURT USE ONLY

FILED
Superior Court of California
County of Los Angeles

FEB 1 0 2014

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shaunya Bolden

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA, 90012
BRANCH NAME: Civil

FILED
Superior Court of California
County of Los Angeles

FEB 1 1 2014

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Judi Lara

**CASE NAME:**
Ortega v. The Kroger Co.

CASE NUMBER:
BC 5 3 6 0 3 4

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: Seven
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 2/10/2014

Dana M. Isaac
(TYPE OR PRINT NAME)                                   DM Isaac
                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**EXHIBIT A - Page 36**

  

BC536034

| SHORT TITLE: Ortega v. The Kroger Co. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**BY FAX**

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL   ☐ HOURS/ ☐ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

**EXHIBIT A - Page 37**

 

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Ortega v. The Kroger Co. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | ①. 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)                              **CIVIL CASE COVER SHEET ADDENDUM**                    Local Rule 2.0
LASC Approved 03-04                              **AND STATEMENT OF LOCATION**                              Page 2 of 4

**EXHIBIT A - Page 38**

 

| SHORT TITLE: Ortega v. The Kroger Co. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☒ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

**EXHIBIT A - Page 39**

| SHORT TITLE: Ortega v. The Kroger Co. | CASE NUMBER: |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: |
|---|---|
| ☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☑10. | |

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90071 |
|---|---|---|

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 2/10/2014

_Om Isaac_
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

**EXHIBIT A - Page 40**

EXHIBIT B



CORPORATION SERVICE COMPANY

# Notice of Service of Process

KZS / ALL
Transmittal Number: 12176498
Date Processed: 02/13/2014

Primary Contact:       Ms. Carrie Cortolillo
                       The Kroger Co.
                       1014 Vine Street
                       Cincinnati, OH 45202-1100

| | |
|---|---|
| Entity: | The Kroger Co.<br>Entity ID Number 2171751 |
| Entity Served: | The Kroger Co. |
| Title of Action: | Anna Ortega vs. The Kroger Co. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Class Action |
| Court/Agency: | Los Angeles County Superior Court, California |
| Case/Reference No: | BC536034 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 02/12/2014 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Dana M. Isaac<br>415-568-2555 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**EXHIBIT B - Page 41**